IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOEL TYNER, ) | |
| ) | 8:05CV460 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM AND ORDER |
| CITY OF OMAHA, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on defendant City of Omaha's ("the City's") motion for summary judgment. Filing No. 22. This is an action for discrimination in employment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff Joel Tyner, an African-American, alleges that the Omaha Fire Department ("OFD") denied him employment as a firefighter because of his race.[1] In its motion for summary judgment, the City contends that plaintiff has not presented a prima facie case of discrimination because the undisputed facts do not support any inference of discrimination.

I.  FACTS

The City has shown by affidavit that the hiring process for firefighters sequentially involves an application, a written examination, a physical examination, and a structured interview. Filing No. 36, Ex. 5, Supplemental Affidavit of Mary Ann Olsen ("Olsen Supp.

---

[1] The City's affirmative action plan, as it applies to promotions within the Fire Department, is presently the subject of another action pending in this court. *See Kohlbek v. City of Omaha,* Case No. 8:03-cv-68; *Kohlbek v. City of Omaha,* 447 F.3d 552, 557-58 (8th Cir. 2006) (finding promotional decisions compelled by the City's 2002 affirmative action plan "were the result of racial classifications that were not narrowly tailored to remedy identified past discrimination," but remanding for consideration of whether the City's "compelling interest in developing and retaining a diverse workforce in the fire department justified the 2002 Plan"). Tyner does not challenge the City's overall practices, policies, or plans; he only challenges the City's application of its policies and procedures to him.

Aff.") at 2-3.  In the structured interview, the candidates are interviewed on videotape and a panel of assessors then evaluate and score the interviews.  *Id.*  The applicants are given a final score that consists of the written test score plus the structured interview score plus any veteran's preference points.  *Id.*  The applicants are then ranked on an eligibility list in the order of their combined final score.  *Id.*  The process is outlined in a brochure that was provided to the plaintiff.  See Filing No 25, Plaintiff's Index of Evidence, Affidavit of Joel Tyner ("Tyner Aff."), Ex. A, Brochure.

The City's Human Resources Department's ("HR") referral of eligible candidates is determined with reference to Omaha Municipal Code ("Code") § 23-232, which provides that if more than one position is to be filled, HR forwards three names for every eligible position, "plus affirmative action names may be referred."  Olsen Supp. Aff. at 3-4; Filing No. 36, Ex. 4A, Code.  The Code also provides that "twice as many affirmative action eligibles as there are vacancies, provided they meet the basic qualifications provided in this chapter, may be referred."  *See* Code at 1-2.  After the eligibility list is certified by HR, the "the Omaha Fire Department makes the final decision as to who to hire."  Olsen Supp. Aff. at 3.  The Fire Chief, or his designee, conducts a personal interview with the candidates who are referred to the final phase of the selection process.  *Id.*

The City has also presented evidence that the factors it considers in hiring individuals are:  (1) ranking on the eligibility list; (2) performance in the Chief's Interview; (3) outcome of the Background Investigation, including reference checks, drug screen, etc.; and (4) underutilization of women and minorities within the Fire Department. Filing No. 28, Ex. 2, Affidavit of OFD Chief Robert Dahlquist ("Dahlquist Aff.") at 1-2.  In his affidavit, Chief Dahlquist stated that the plaintiff was not selected as a firefighter for the City of Omaha in the January 2004 class because there were other candidates who were more

2

qualified. *Id.* at 2. The evidence shows that Joel Tyner ranked 354th out of 366 candidates on the City's written and physical examinations and structured interviews. Olsen Supp. Aff. at 3. Forty-one applicants were hired, ranking 3rd to 325th on the eligibility list. *Id.* Three black males were hired, two Hispanic males were hired, one Asian American male was hired and two females were hired.

The City also submitted affidavits showing that OFD Battalion Chief Joseph Gibilisco conducts background checks for the OFD. Filing No. 36, Ex. 5, Supplemental Affidavit of Joseph Gibilisco ("Gibilisco Supp. Aff.") at 1. In his affidavit, Gibilisco states that in September 2003 Chief Dahlquist forwarded sixty names to him "in order that full background checks could be completed." *Id.* at 2. The full background checks included "a urinalysis (drug screen); fingerprinting; verification of references and other information provided in the personal history questionnaire." *Id.* "Due to Mr. Tyner's rank on the list, his name was not included" in that initial list. *Id.* Gibilisco further states that "in November 2003, the Fire Chief expressed his desire to me to have more African American referrals, so he instructed me to conduct full background checks on all remaining African Americans on the list." *Id.* The supplemental list included Joel Tyner. *Id.* Battalion Chief Gibilisco also states that "[o]n November 12, approximately six African American applicants were assembled to collect background information including urinalysis" and acknowledges that "[m]inority applicants were contacted before some nonminority applicants in an effort to promote positive recruitment of African Americans and other minorities in compliance with the City's Affirmative Action Plan." *Id.*

In his affidavit, Battalion Chief Gibilisco also states that "the Omaha Fire Department never required Joel Tyner to submit to a physical or psychological examination" and that

3

Tyner "was never given a conditional offer of employment with the Omaha Fire Department." *Id.* at 1-2. Gibilisco also states that Joel Tyner passed the drug screen. *Id.*

In opposition to the motion, Tyner states in his affidavit that he was contacted by the City of Omaha in mid-October 2003 for medical examinations. Tyner Aff. at 2. Tyner also states that he was asked by the OFD to report to a conference room at the Fire Department on November 12, 2003. *Id.* at 2-3. He further states:

> Eleven other African-American applicants met at the conference room at the same time at the request of the City of Omaha Fire department. At the meeting, each of us, myself included, were asked to update information on our Personal History statements. Afterward, each of us, myself included, was lined up at a different conference room for the purpose of submitting urine samples to the City of Omaha. Following the submission of urine samples, the City of Omaha took photographs of each of us and then had us, as a group, go to the Omaha Police department for fingerprinting. Before we could leave, each of us had to schedule background investigations interviews.

*Id.* at 2-3. Tyner states that he subsequently had a background investigations interview, but was informed on January 4, 2004, that he was not being hired as a firefighter. *Id.* Tyner has also submitted evidence that indicates that a urinalysis may have been performed at Bergan Mercy Medical Center. *Id.,* Tyner Aff., Ex. C at 3.

II. LAW

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). The burden of establishing that there are no genuine issues of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If defendant does not meet this initial burden, summary

4

judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir. 1987). In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003). The court must view the evidence in the light most favorable to the nonmoving party and must make all reasonable inferences in favor of the nonmoving party. *Green v. Dillard's, Inc.,* — F.3d —, —, 2007 WL 1012941, *4 (8th Cir. 2007).

Summary judgment should seldom be granted in employment discrimination cases because intent is often the central issue and claims are often based on inference. *Peterson v. Scott County,* 406 F.3d 515, 520 (8th Cir. 2005). Summary judgment should be granted only if the evidence will not support any reasonable inference of discrimination. *Id.* A defendant is not entitled to summary judgment if the plaintiff has sufficient evidence that unlawful discrimination was a motivating factor in the defendant's action even if the defendant has brought forward evidence of additional legitimate motives. *Id.* On summary judgment the plaintiff need only present evidence sufficient to raise genuine doubt as to the legitimacy of the defendant's motives. *Id.* In the employment-discrimination context, "a plaintiff may avoid summary judgment if he or she presents evidence 'sufficient for a reasonable factfinder to infer that the employer's decision was motivated by discriminatory animus.'" *Fair v. Norris,* — F.3d —, —, 2007 WL 896276, *3 (8th Cir. March 27, 2007) (*quoting Dionne v. Shalala,* 209 F.3d 705, 709 (8th Cir. 2000)).

A plaintiff may survive the defendant's motion for summary judgment in one of two ways. *Arraleh v. County of Ramsey,* 461 F.3d 967, 974 (8th Cir. 2006), *petition for cert. filed,* No. 06-1137*,* 75 U.S.L.W. 3457 (February 12, 2007). First, the plaintiff may present

direct evidence of discrimination, which is evidence that shows a specific link between the alleged discriminatory animus and the challenged decision, "'sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action." *Id.* (*quoting Griffith v. Des Moines,* 387 F.3d 733, 736 (8th Cir. 2004)); *see also Green,* — F.2d at —, 2007 WL 1012941 at *6 (finding that use of a racial slur is direct evidence of discrimination). If the plaintiff lacks evidence that clearly points to the presence of an illegal motive, however, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the burden-shifting framework of *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973), including sufficient proof of pretext.[2] *Id.* When a plaintiff provides direct evidence of discrimination, the three-part *McDonnell Douglas* analysis is unnecessary. *Id.*

III.  ANALYSIS

The uncontroverted evidence shows that black applicants were "singled out" or segregated on the basis of race at one point in the selection process. This amounts to

---

[2]Under the *McDonnell-Douglas* burden-shifting framework, the initial burden is on the plaintiff to establish a prima facie case of racial discrimination by showing: (1) that he belongs to a racial minority; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) he was not hired and a nonminority candidate was hired. *See, e.g., McDonnell-Douglas,* 411 U.S. at 802*; Stewart v. Indep. Sch. Dist. No. 196,* — F.3d —, — 2007 WL 1029327, *7-8 (8th Cir. April 6, 2007); *Green v. Franklin Nat'l Bank of Minneapolis,* 459 F.3d 903, 914 (8th Cir. 2006) (involving retaliation). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to show a nondiscriminatory reason for the adverse employment action. *See Stewart,* — F.2d at —, 2007 WL 1029327 at 8. If the defendant can show a legitimate, nondiscriminatory reason for its actions, the burden returns to the plaintiff who is then obliged to present evidence that creates a question of fact as to whether the defendant's reason was pretextual. *Id.*

Alternatively, even under the burden-shifting framework, the court would find that the City has not sustained its burden to show that it is entitled to summary judgment. The actual evidentiary burden that a plaintiff must meet at the prima facie stage is minimal. *Id.* at *8. The plaintiff has met that burden. When the evidence a plaintiff has submitted to establish his or her prima facie case is not strong, that evidence standing alone may not be sufficient to sustain the plaintiff's case at the final stage of the final stage of the burden-shifting analysis. *Id.* Conversely, where the evidence of causation for purposes of establishing a prima facie case is quite strong, it may be sufficient, standing alone, to prove a defendant's liability without resort to further evidence. *Id.*

On this record, viewing the evidence in the light most favorable to the plaintiff, the court cannot state that the plaintiff's case falls in either the weak or strong category. Numerous questions remain with respect to the City's hiring practices. Let it suffice to say that the uncontroverted evidence that the City singled out certain applicants on the basis of race is sufficient evidence to create an issue of fact on pretext.

6

direct evidence that creates the inference of a discriminatory motive. *See, e.g., Ferrill v. Parker Group, Inc.,* 168 F.3d 468, 471-72 (11th Cir. 1999) (involving race-matched "get out the vote" calls and holding that a defendant who acts with no racial animus but makes job assignments on the basis of race can be held liable for intentional discrimination). The record is not clear with respect to whether or when in the hiring process nonminority applicants underwent similar background investigations and/or urinalysis drug testing. On the present record, the court cannot conclude that the hiring process followed in this case, admittedly involving the separate screening of a group of African-American candidates, was motivated only by the City's desire to correct a racial imbalance. If all nonminority candidates were not similarly tested, the evidence presented could equally support an inference that the City preliminarily screened the Africa-American candidates in order to hire a predetermined number of those candidates without regard to their qualification or merit relative to other candidates. Such conduct could be indicia of impermissible discrimination. In light of the other evidence, the City's proffered reliance on Tyner's rank on the eligibility list is not determinative. The court simply cannot find, on this record, that race did not play a role in the City's failure to hire the plaintiff.

The affidavits and documentary evidence submitted by the parties involve questions of credibility, both with respect to the facts surrounding Tyner's application process and the parties' motives and intent. Resolution of these issues on a motion for summary judgment is not appropriate. Viewing the evidence in the light most favorable to the plaintiff, the court finds that the City has not sustained its burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Accordingly, the court finds the City's motion should be denied. Accordingly,

7

IT IS HEREBY ORDERED that defendant City of Omaha's motion for summary judgment (Filing No. 22) is denied.

DATED this 20th day of April, 2007.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge